**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-cv-80804

**DAVID EPSTEIN**,

Plaintiff,
v.

**PRIVATE JETS, INC**.; **JERRY YATES**, individually;
**KATHLINE MAHONEY**, individually; and **DOES 1** through 10,

Defendants.
_______________________________________/

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff David Epstein ("Plaintiff" or "Epstein"), by and through undersigned counsel, sues Defendants Private Jets, Inc. ("PJI"), Jerry Yates ("Yates"), Kathline Mahoney ("Mahoney"), and Does 1 through 10, and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for unlawful retaliation, wrongful termination, defamation, false light invasion of privacy, tortious interference with advantageous business relations, and related equitable relief arising out of Plaintiff's discharge as a professional pilot after he questioned whether his employer could require him to bear part of the cost of mandatory recurrent training needed to continue performing his job.

2. Plaintiff was terminated the same day he made a good-faith inquiry in a private professional forum regarding whether an employer may require a pilot to pay part of the cost of employer-required recurrent training.

3. Defendants then published and republished false and stigmatizing accusations that Plaintiff had breached confidentiality, acted unprofessionally, and disclosed internal company matters,

including in termination-related correspondence and employment records that Defendants knew would be reviewed by current and prospective aviation employers.

4. Plaintiff seeks compensatory damages, punitive damages, declaratory relief, injunctive relief, attorneys' fees where authorized by law, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action includes claims arising under federal law, including the Fair Labor Standards Act's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

6. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

7. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District and Defendants transact business in this District.

8. Plaintiff has suffered damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

## PARTIES

9. Plaintiff David Epstein is an individual residing in Florida and, at all relevant times, was employed as a professional pilot.

10. Defendant Private Jets, Inc. is, upon information and belief, an Oklahoma business entity that employed Plaintiff and regularly did business in Florida and elsewhere.

11. Defendant Jerry Yates is an individual who, at all relevant times, was an officer, director, manager, or decision-maker for PJI and personally participated in and/or ratified the conduct alleged herein.

12. Defendant Kathline Mahoney is an individual who, at all relevant times, acted on behalf of PJI in connection with Plaintiff's separation, employment records, and related communications, and personally participated in and/or ratified the conduct alleged herein.

13. Defendants Does 1 through 10 are persons or entities whose identities are presently unknown but who participated in, authorized, approved, published, republished, or facilitated the wrongful acts alleged herein. Plaintiff will amend this Complaint when their identities are known.

## FACTUAL ALLEGATIONS

14. PJI employed Plaintiff as a pilot in its Federal Aviation Administration Part 135 charter operations.

15. Plaintiff was hired in approximately January 2023 as a First Officer.

16. In approximately May 2023, Plaintiff was upgraded to Captain/PIC after signing a one-year training agreement.

17. That training agreement expired in approximately April 2024.

18. In or about June 2025, Plaintiff was due for recurrent training required for him to continue performing his job duties.

19. PJI informed Plaintiff that it would not provide recurrent training unless Plaintiff agreed to share the cost of the training.

20. The training at issue was required by the employer and was necessary for Plaintiff to continue working as a pilot.

21. Plaintiff in good faith questioned whether it was lawful for PJI to require him to pay part of the cost of mandatory recurrent training.

22. On or about June 17, 2025, Plaintiff made a post in a private professional pilot forum asking whether it was legal for an employer to require a pilot to split the cost of required recurrent training.

23. Plaintiff's post did not identify PJI by name.

24. Plaintiff's post did not disclose customer information, manifests, financial information, trade secrets, or proprietary operating procedures.

25. Plaintiff's post did not accuse any named individual of criminal or immoral conduct.

26. Plaintiff's post was, in substance, a good-faith request for industry input concerning the legality of a proposed employment practice.

27. On the same day, PJI terminated Plaintiff's employment effective immediately.

28. In the termination letter, PJI stated that Plaintiff had forwarded internal and private communication intended only for him and one other pilot to the entire pilot group without authorization.

29. In that same letter, PJI further stated that Plaintiff publicly questioned the legality of the company's training-cost proposal via social media "where [he] disclosed internal company matters."

30. The termination letter claimed Plaintiff's conduct represented a "serious breach of trust" and conduct inconsistent with the standards of professionalism expected at PJI.

31. The termination letter stated that Plaintiff's continued employment was no longer tenable.

32. The company thereby communicated, expressly and by implication, that Plaintiff was disloyal, untrustworthy, unprofessional, indiscreet, and unfit to serve as a pilot.

33. Those accusations strike directly at the core of Plaintiff's profession.

34. After Plaintiff's discharge, Defendants also prepared and/or circulated an Employee Disciplinary Action Form or similar disciplinary record.

35. That disciplinary form checked "Professionalism" and repeated, in substance, that Plaintiff violated company confidentiality policies, forwarded a private email without authorization, and publicly disclosed internal company information, resulting in immediate termination.

36. Defendants requested that Plaintiff sign the form.

37. Plaintiff did not agree with the false narrative set forth in the form.

38. After Plaintiff returned company property, Mahoney communicated, in substance, that the form had to be added to the PRD regardless of whether Plaintiff signed it.

39. Defendants thus used the threat of PRD publication as leverage to pressure Plaintiff to sign a false and career-damaging document.

40. On June 25, 2025, counsel Thomas P. Bergwall sent a demand letter to Yates and Mahoney on Plaintiff's behalf.

41. That letter specifically advised Defendants that Plaintiff's post did not identify his employer, did not disclose confidential information, and did not justify termination.

42. That letter also instructed Defendants not to negatively affect Plaintiff's PRD profile and not to file an inaccurate and libelous PRD entry.

43. Notwithstanding that written notice, Defendants caused negative employment information tied to the disputed termination to be reported, uploaded, published, maintained, and/or republished through PRD and/or related hiring channels.

44. Plaintiff is informed and believes, and on that basis alleges, that the PRD entry repeated, adopted, embodied, or was based upon the same accusations reflected in the termination letter and disciplinary form.

45. Plaintiff further alleges that Defendants knew, or acted with reckless disregard of the fact, that such accusations were false, materially misleading, or at minimum grossly overstated.

46. Plaintiff was not afforded any meaningful pre-termination investigation, hearing, or fair opportunity to respond before Defendants branded him as having committed a serious professionalism and confidentiality offense.

47. Defendants knew that accusations of dishonesty, confidentiality breaches, unprofessional conduct, or trust-related disqualification would predictably impair Plaintiff's ability to obtain future pilot employment.

48. As a direct and proximate result of Defendants' actions, Plaintiff has suffered loss of employment, loss of income, loss of future earning capacity, reputational harm, professional stigma, embarrassment, humiliation, anxiety, and emotional distress.

49. Plaintiff has further suffered interference with present and prospective relationships with recruiters, hiring departments, air carriers, charter operators, and other aviation employers.

50. Each publication and republication of the false accusations, including through letters, forms, PRD-related reporting, and related oral or written communications, constituted a fresh and foreseeable injury to Plaintiff.

**COUNT I**
**RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 215(a)(3)(Against PJI)**

51. Plaintiff realleges paragraphs 1 through 50 as if fully set forth herein.

52. The Fair Labor Standards Act prohibits an employer from discharging or otherwise discriminating against an employee because the employee has filed any complaint or engaged in protected activity under the Act. See 29 U.S.C. § 215(a)(3).

53. Plaintiff engaged in protected activity by questioning and objecting to a compensation-related practice that would require him to bear the cost of mandatory work-required training.

54. Plaintiff reasonably believed PJI's conduct violated the FLSA and/or related wage-and-hour protections, including by shifting employer business expenses to an employee in a way that would burden lawful wages.

55. PJI knew of Plaintiff's protected activity.

56. PJI terminated Plaintiff because of that protected activity, or at minimum because of Plaintiff's complaint concerning the training-cost practice.

57. Plaintiff suffered damages as a direct and proximate result.

58. Plaintiff is entitled to reinstatement or front pay, back pay, liquidated damages to the extent available, attorneys' fees, costs, and such other relief as the Court deems proper.

**COUNT II**
**RETALIATION IN VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLEBLOWER ACT**
**Fla. Stat. §§ 448.101–448.105**
**(Against PJI)**

59. Plaintiff realleges paragraphs 1 through 58 as if fully set forth herein.

60. The Florida Private Sector Whistleblower Act prohibits an employer from taking retaliatory personnel action against an employee because the employee objected to, or refused to

participate in, an activity, policy, or practice of the employer that violated a law, rule, or regulation. See Fla. Stat. § 448.102(3).

61. Plaintiff objected to a training-cost practice that he reasonably believed was unlawful and contrary to wage-and-hour requirements.

62. Alternatively, Plaintiff made a good-faith disclosure concerning an unlawful compensation practice and refused to acquiesce in it.

63. PJI knew of Plaintiff's objection and protected activity.

64. PJI took adverse employment action against Plaintiff, including immediate termination.

65. The termination was causally connected to Plaintiff's protected activity.

66. Plaintiff has complied with any applicable pre-suit requirements or, in the alternative, any such requirement was satisfied, waived, or is inapplicable based on the facts to be developed in discovery.

67. Plaintiff suffered damages as a direct and proximate result.

## COUNT III
## DEFAMATION / LIBEL
## (Against All Defendants)

68. Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

69. Defendants published to third parties false and defamatory statements of and concerning Plaintiff, including statements that Plaintiff:

a. forwarded internal and private communications without authorization;

b. publicly disclosed internal company matters;

c. violated confidentiality policies;

d. committed a serious breach of trust; and

e. engaged in conduct inconsistent with the standards of professionalism expected of a pilot.

70. The statements were about Plaintiff and were understood by recipients to refer to Plaintiff.

71. The statements were false.

72. Defendants knew the statements were false or acted with reckless disregard as to their truth or falsity.

73. The statements were published in written and oral communications to persons other than Plaintiff, including company personnel, aviation hiring channels, PRD recipients, and other third parties.

74. The statements tended to injure Plaintiff in his trade, profession, and livelihood as a pilot.

75. The statements constitute defamation per se because they impugn Plaintiff's fitness for his profession and business.

76. As a direct and proximate result, Plaintiff suffered damages including lost employment opportunities, lost earnings, reputational harm, and emotional distress.

77. Defendants acted with malice, bad faith, and reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages where allowed by law.

**COUNT IV**
**FALSE LIGHT INVASION OF PRIVACY**
**(Against All Defendants)**

78. Plaintiff realleges paragraphs 1 through 77 as if fully set forth herein.

79. Defendants made public statements and disclosures about Plaintiff.

80. Through the termination letter, disciplinary form, PRD-related reporting, and associated republications, Defendants placed Plaintiff before the aviation community in a false light.

81. Defendants portrayed Plaintiff as a disloyal, indiscreet, confidentiality-breaching, unprofessional pilot who could not be trusted with internal information and whose judgment justified immediate termination.

82. That portrayal was false.

83. The false light would be highly offensive to a reasonable person, particularly to a professional pilot whose livelihood depends on trust, competence, discretion, and regulatory credibility.

84. Defendants knew the published matter was false, or at minimum entertained serious doubts as to its truth and published it anyway.

85. As a direct and proximate result, Plaintiff has suffered injury to reputation, humiliation, mental anguish, and economic loss.

**COUNT V**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**
**(Against All Defendants)**

86. Plaintiff realleges paragraphs 1 through 85 as if fully set forth herein.

87. Plaintiff had valid existing and prospective business relationships and expectancies with current and future aviation employers, air carriers, charter operators, recruiters, and hiring personnel.

88. Defendants knew of those prospective relationships and expectancies.

89. Defendants knew that pilots depend on future employers' review of reputation, training history, disciplinary history, and separation history.

90. Defendants intentionally and improperly interfered with Plaintiff's prospective business relations by publishing and republishing false accusations that impugned his fitness and professionalism as a pilot.

91. Defendants' interference was malicious, wrongful, unjustified, unprivileged, and in bad faith.

92. Any claimed privilege or justification is defeated because Defendants acted with knowing falsity, reckless disregard, retaliatory motive, and a purpose to damage Plaintiff's future employment prospects.

93. As a direct and proximate result, Plaintiff has lost or been impaired in obtaining prospective employment opportunities, future income, bargaining power, and career advancement.

**COUNT VI**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

94. Plaintiff realleges paragraphs 1 through 93 as if fully set forth herein.

95. An actual, present, and justiciable controversy exists regarding the truth or falsity of Defendants' statements concerning Plaintiff's alleged confidentiality breach, alleged disclosure of internal company matters, alleged lack of professionalism, and the propriety of Defendants' use of such accusations in PRD-related records and other employment communications.

96. Monetary damages alone are inadequate because the injury is ongoing and recurring every time the false narrative is accessed, reviewed, republished, or relied upon by a current or prospective aviation employer.

97. Plaintiff seeks a declaration that Defendants' statements accusing him of unauthorized disclosure of confidential internal matters, professionalism breaches, and related career-disqualifying conduct were false, misleading, or materially incomplete.

98. Plaintiff further seeks preliminary and permanent injunctive relief requiring Defendants to cease further false publication, to retract and/or correct false statements, and to amend, correct,

withdraw, or supplement any PRD-related or other employment-related records to the extent permitted or required by applicable law.

99. Plaintiff further seeks an order requiring Defendants to preserve all documents, communications, screenshots, metadata, internal messages, PRD submissions, drafts, and records relating to Plaintiff's discipline, discharge, and reporting.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally where permitted, and award:

A. Back pay;

B. Front pay or reinstatement, as appropriate;

C. Lost benefits and compensation;

D. Compensatory damages;

E. Emotional distress damages;

F. Damages for reputational harm and loss of earning capacity;

G. Liquidated damages, to the extent available;

H. Punitive damages, to the extent allowed by law;

I. Declaratory relief;

J. Injunctive relief;

K. Attorneys' fees and costs where authorized by statute or contract;

L. Prejudgment and post-judgment interest; and

M. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**VERIFICATION**

I declare under penalty of perjury that I have read the foregoing Complaint and that the facts stated in it are true and correct to the best of my knowledge, information, and belief.

Executed on July 2, 2026

David Epstein
______________________________
DAVID EPSTEIN

Respectfully Submitted,

**SEILER, SAUTTER, ZADEN,**
**RIMES & WAHLBRINK**

By: /s/
Richard Zaden, Esquire
Florida Bar #867357
2850 N Andrews Ave
Wilton Manors, FL 33311

(954) 568-7000
rzaden@sszrlaw.com

**SCHULTE BOOTH, P.C.**

By: /s/
Robert D. Schulte, Esq. (Pending PHV)
5263 Bucktown Road
Suite #4
Cambridge, Maryland 21613

Tel: (410) 822-1200
rschulte@schultebooth.com

*Counsel for Plaintiff*